**Not For Publication**                                                                 **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSWALD SALVATICO, : | Civil Action No. 06-0725 (FSH) |
| Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | February 26, 2007 |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| Defendant. : | |

**HOCHBERG, District Judge.**

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner"), pursuant to the Social Security Act, as amended, 42 U.S.C.A. §405(g) (2007). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.     Background.**

Plaintiff, a 45-year-old individual with a tenth-grade education, alleges that he became disabled on January 1, 2004, due to arthritis and severe deformity of the femur. Plaintiff has a history of knee problems and was involved in an auto accident in February 2005 that further aggravated his injuries. Plaintiff has prior work experience as a baker and a painter. Plaintiff filed an application for Disability Insurance Benefits on June 10, 2004, and the application was denied both initially and on reconsideration. Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held on May 4, 2005.

The ALJ considered the medical reports of the plaintiff's treating physicians and

consultative examiners[1] in reaching his decision.  On March 4, 2004, treating physician Dr. Daniel Mulholland diagnosed the plaintiff with "[s]evere posttraumatic arthritis, secondary to deformity of the femur."  (Tr. 48).  An X-ray examination revealed a lateral bow to the femur and arthritic problems in the right knee.  *Id.*  Dr. Mulholland recommended less stressful work but did not state that the plaintiff could not work.  *Id.*  After an examination on August 19, 2004, consultative examiner Dr. Misra noted inequality of the lower limbs and observed that the plaintiff had no trouble with heel and toe walking on the left side.  (Tr. 152).  The plaintiff reported to Dr. Misra that he could dress himself, perform all hygiene tasks, walk three blocks, stand for 30 minutes, and drive.  *Id.*  Dr. Misra noted that it would be difficult for the plaintiff to perform work where prolonged standing, bending, kneeling, climbing, crouching, lifting, pulling or pushing was required.  (Tr. 153).  State examiner Dr. James Paolino evaluated plaintiff's functional ability on September 20, 2004, and Dr. Paolino's findings were consistent with the full range of sedentary work.  (Tr. 156-62).

Following a car accident on February 11, 2005, treating physician Dr. Rekha Rao performed a neurological consultation for the plaintiff on February 25, 2005.  (Tr. 164-65).  She noted that the plaintiff did not appear to be in acute distress, that motor and sensory testing was normal, and that strength was normal in all muscle groups except the left deltoid muscle.  *Id.*  An MRI performed by Dr. Rao showed multi-level disc disease, but this diagnosis was later ruled out by consultative examiner Dr. Jacqueline Del Valle on March 21, 2005.  (Tr. 166-71).  Although Dr. Del Valle reported that plaintiff had an antalgic gait, some pain and stiffness in the cervical

---

[1] State agency medical consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions in issuing decisions.  20 C.F.R. §§404.1512(b)(6) and 416.912(b)(6).

spine, and limited motion in the lumbar spine, the doctor also noted that plaintiff was still able to heel and toe walk. (Tr. 169-70). A subsequent MRI revealed that plaintiff had a partial disc desiccation but showed no significant disc bulge or herniation. (Tr. 172-73). Dr. Del Valle noted that there were no motor or sensory problems in plaintiff's extremities. (Tr. 171).

Plaintiff testified that he can no longer work as a painter because of his health and that the pain in his knees has been getting worse for the last five years. (Tr. 196-97). He has not had knee surgery since he was 14 or 15, and he only takes Tylenol and Aspirin for his pain because he fears stronger medications may lead to addiction. (Tr. 197-98). He testified that he has problems climbing stairs and that his knee locks up when he sits for long periods. (Tr. 202).

The ALJ found the plaintiff's allegations were not fully credible and that plaintiff was not disabled. (Tr. 20, 23). Plaintiff argues (1) that the ALJ did not enumerate or identify plaintiff's severe impairments and failed to compare them to the listed impairments ("Listings"), and (2) that the ALJ impermissibly used the Medical-Vocational Guidelines in his evaluation because plaintiff has non-exertional limitations.[2]

## II.   **Standard of Review for Disability Benefits.**

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision. 42 U.S.C.A. §405(g); *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.

---

[2] At Step Five of the disability analysis, the ALJ may use the Medical-Vocational Guidelines to determine disability based on the claimant's residual functional capacity, age, education and past work experience. *See* 20 C.F.R. §§404.1520(g) and 416.920(9); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. However, if the claimant also has non-exertional limitations, the ALJ must take additional vocational evidence, such as the testimony of a vocational expert. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Paragraph 200.00(e)(2); *Sykes v. Apfel*, 228 F.3d 259, 264-65 (3d Cir. 2000).

1988). Substantial evidence is "more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (D. Pa. 1999) (quoting *Consolidated Edison*, 305 U.S. at 229). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

### III.    Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. §423(d)(1)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3) and 1382c(a)(3)(D). An individual will be found disabled only if the impairment is so severe that he is not only unable to do his previous work, but cannot, considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

   Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found

4

not disabled without consideration of his medical condition.  20 C.F.R. §§404.1520(b) and 416.920(b).

Step Two: Severe Impairment.  If the individual is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities.  20 C.F.R. §§404.1520(c) and 416.920(c).

Step Three: Listed Impairment.  If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1 or is the equivalent of a listed impairment.  If the individual has such an impairment, the Commissioner will find the individual disabled.  20 C.F.R. §§404.1520(d) and 416.920(d).

Step Four: Residual Functional Capacity.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite his impairment, the individual has the residual functional capacity to perform his past relevant work.  Residual functional capacity is defined as what the claimant can still do despite his limitations.  If he has the capacity to perform past work, the individual will be found not disabled.  20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f).

Step Five: Other Work.  Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he is able to perform other work functions.  If he cannot do so, the individual will be found disabled.  20 C.F.R. §§404.1520(g) and 416.920(9).  The Commissioner may conduct this analysis by using the Grids, unless the claimant has non-

exertional limitations in addition to exertional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2 Paragraph 200.00(e)(2). When the claimant has non-exertional limitations, the Commissioner must rely on additional vocational evidence. *Id*. This evidence includes the testimony of a vocational expert or an applicable Social Security Ruling. *See Sykes v. Apfel*, 228 F.3d 259, 264-65 (3d Cir. 2000); *Allen v. Barnhart*, 417 F.3d 396, 404-5 (3d Cir. 2005).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Secretary of Health and Human Services*, 722 F. 2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion in the first four steps, but if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner does not review the claim further. 20 C.F.R. §§404.1520(a)(4) and 416.920(a)(4).

**IV.    Analysis.**

Administrative Law Judge John Farley performed the required five-step analysis in evaluating plaintiff's disability claim. In Step One, the ALJ found that the plaintiff had not engaged in substantial gainful activity from the time of the alleged onset of the disability. In the Step Two analysis, the ALJ found that the plaintiff's osteoarthritis and related disorders qualified as a severe impairment under 20 C.F.R. §404.1520(c). In Step Three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listed impairments. The ALJ held that plaintiff did not meet the requirements"set forth in 1.00 for the Musculoskeletal System

of Impairments" because plaintiff had retained the ability to ambulate effectively. The ALJ found that the plaintiff's allegations regarding his impairment were not fully credible.

In the Step Four analysis, the ALJ found that the plaintiff did not possess the residual functional capacity to perform past relevant work. The ALJ held that because plaintiff was only capable of sedentary work, he could no longer work as a painter, his most recent occupation, because that job required lifting, standing and climbing beyond plaintiff's capabilities.[3]

In his Step Five analysis, the ALJ used the Grids to direct a finding of "not disabled," based on plaintiff's age, education, and past work experience. Medical-Vocational Rule 201.25, 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on a review of medical reports, the ALJ concluded that plaintiff was capable of the full range of sedentary work. The ALJ noted that use of the guidelines is appropriate only when there are no non-exertional limitations but made no express findings as to whether plaintiff had non-exertional limitations.

Plaintiff argues (1) that the ALJ did not enumerate or identify plaintiff's severe impairments and failed to compare them to the Listings at Step Three, and (2) that the ALJ impermissibly relied on the Grids at the fifth step of the evaluation because the Grids may not be used when the plaintiff has non-exertional limitations.

A.     **Comparison of Plaintiff's Impairments with the Listings.**

Plaintiff asserts that the ALJ failed to enumerate, identify, or articulate the plaintiff's severe impairments or to compare them to the Listings at Step Three. The Third Circuit requires that the ALJ recite not only the evidence that supports the result but also the evidence which is

---

[3] Plaintiff's prior work as a baker was not deemed relevant because plaintiff had not worked as a baker since 1985, and the definition of relevance only includes work done within the last 15 years. 20 C.F.R. §404.1565(a).

7

rejected in order that the reviewing court may know the basis of the decision. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The Commissioner's regulations also require that the ALJ compare the claimant's impairment with the Listings. 20 C.F.R. §404.1526(a).

Plaintiff argues that the ALJ's failure to recite other evidence in his Step Three analysis violates *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000). In *Burnett*, the Third Circuit rejected the ALJ's analysis because the ALJ only issued a conclusory finding that the plaintiff's impairments did not meet the severity of the Listings and recited no supporting evidence. *Id*. at 119. Here the ALJ held that plaintiff's impairments did not meet the severity of the Listings because the plaintiff had not lost the ability to ambulate effectively. (Tr. 18). On review, the Court must determine whether this finding on plaintiff's ability to ambulate effectively was supported by substantial evidence. The Listings state that:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning. . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, Paragraph 1.00(B)(2)(b).

Dr. Misra and Dr. Del Valle, both consultative examiners, each reported that plaintiff had no trouble heel and toe walking. Moreover, plaintiff reported to Dr. Misra in August 2004 that he could dress himself, complete all personal hygiene tasks, walk three blocks, stand for 30 minutes, and drive. After plaintiff's car accident, Dr. Rao found that plaintiff's motor skills and strength were almost normal, and MRI testing ultimately revealed no significant disc bulge or

herniation.  The ALJ noted that plaintiff does not require the use of a cane, walker, or other hand-held assistive device.  The ALJ concluded that plaintiff's claim that he has severe difficulty walking was not credible.  After reviewing the record, the Court holds that the ALJ's finding that plaintiff could ambulate effectively is supported by substantial evidence.

Plaintiff also argues that the ALJ failed to properly compare plaintiff's impairments with the Listings at Step Three, as required by the regulations.  The ALJ concluded that the plaintiff's impairments did not meet or equal the requirements set forth in Listing 1.00 for Musculoskeletal System of Impairments.  Section 1.02 requires "Major dysfunction of a joint. . . Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion . . . with [the inability to ambulate effectively or problems in the upper extremities.]"  20 C.F.R. Pt. 404, Subpt. P, App. 1, Paragraph 1.02.  Although plaintiff's femur deformity and osteoarthritis satisfy the first part of this test, the ALJ found that these conditions do not meet the conjunctive second part.  Because plaintiff has retained the ability to ambulate effectively and has alleged no problems in his upper extremities, the Court finds that there is substantial evidence that plaintiff's impairments do not meet or equal those listed in Listing 1.00 for Musculoskeletal System of Impairments and that the ALJ made an adequate comparison of plaintiff's impairments with the Listings.[4]

**B.      Need for Vocational Evidence.**

Plaintiff alleges that the ALJ erred by relying on the Grids at Step Five of the analysis

---

[4] Although the ALJ did not compare plaintiff's impairments with any of the other Listings, the burden is on the claimant at Step Three.  Plaintiff has only argued that his impairments satisfy Section 1.02 of Listing 1.00.  Because the ALJ's finding that plaintiff does not meet Section 1.02 is supported by substantial evidence, plaintiff's claim fails at Step Three.

because plaintiff has non-exertional limitations. The Grids may not be used to direct a finding of "disabled" or "not disabled" if the claimant has non-exertional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Paragraph 200.00(e)(2). Where a claimant has non-exertional limitations, the Commissioner must consider additional vocational evidence, such as the testimony of a vocational expert or an applicable Social Security Ruling. *Id*.; *Sykes v. Apfel*, 228 F.3d 259, 264-65 (3d Cir. 2000); *Allen v. Barnhart*, 417 F.3d 396, 404-5 (3d Cir. 2005). Although the ALJ noted this standard, he made no finding as to whether plaintiff had non-exertional limitations and only relied on the Grids for his Step Five analysis.[5] The Court will remand the case to the ALJ to determine whether plaintiff has non-exertional limitations, and, if so, to consider additional evidence in accordance with the applicable law.

## V.     Conclusion.

For the aforementioned reasons, and after a careful review of the record, the Court finds substantial evidence to support the ALJ's determination that plaintiff's impairments did not meet or medically equal any of the listed impairments. The Court remands the case to determine whether plaintiff possesses non-exertional limitations in addition to exertional limitations, and, if so, to consider additional vocational evidence at Step Five of the analysis.

/s/ Faith S. Hochberg  
**Hon. Faith S. Hochberg, U.S.D.J.**

---

[5] The Regulations define non-exertional limitations as those imposed by the claimant's impairment that affect the claimant's ability to meet job demands other than strength demands. 20 C.F.R. §416.969a(c)(1). Among the examples of non-exertional limitations provided by the Regulations are "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, *climbing*, crawling, or *crouching*." *Id.* (emphasis added). The Court notes that Dr. Misra observed that it would be difficult for the plaintiff to perform work where prolonged *climbing or crouching* was required (among other limitations). (Tr. 153) (emphasis added).